**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CRIMINAL NO. EP-06-CR-1261-FM** |
| **v.** | § | |
| | § | |
| **JUAN CARLOS RUFFIER,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**GOVERNMENT'S MEMORANDUM OF LAW REGARDING JURISDICTION AND
ELEMENTS OF 18 U.S.C. 1204**

The United States of America, through the United States Attorney for the Western District

of Texas and the undersigned Assistant United States Attorneys, files this Memorandum of Law

in anticipation of potential legal issues that may arise as a result of the defendant Ruffier's 2005

flight to Argentina with his then three-year old son, without the knowledge or consent of the child's

mother; the international kidnapping charge in the Indictment in the above styled and numbered

cause which ensued as a result of that flight; a possible claim that the defendant was acquitted of

a similar kidnapping charge filed in Argentina based on the same conduct charged in the instant

Indictment; and a reputed claim based on a subsequent 2006 State appellate court ruling which

vacated the custody order regarding the child which had been in effect at the time of the

kidnapping.

## JURISDICTION

For the purpose of this Memorandum, the government will assume that Ruffier was officially charged with kidnapping his son, Johnathan Charles Ruffier, by Indictment by a federal grand jury sitting in the Western District of Texas, on June 28, 2006, which Indictment is now pending before this Honorable Court. Further, this Memorandum, *arguendo*, assumes the defendant was charged by an appropriate law enforcement authority in Argentina and was acquitted of the charge after a hearing was conducted by an Argentinian court.

Although the government has not seen any evidence that Ruffier was charged, tried and acquitted, in Argentina, of kidnapping his son, the government was so advised by a woman named Marisa Claudia Gonzalez, who claimed to be Ruffier's Argentinian defense counsel.  On Tuesday, March 7, 2017, immediately following the defendant's initial appearance, Ms. Gonzalez approached undersigned, through an interpreter, and stated that Ruffier was acquitted in a court in Argentina of the kidnapping of his son, Johnathan Ruffier in a court in Argentina. She opined that, under those circumstances, the U.S. government could not proceed against Ruffier for the kidnapping charged in the instant Indictment because it would violate Ruffier's due process rights in the United States. The government disagrees.

Similarly, on March 10, 2017, before the Honorable U.S. Magistrate Judge Anne Berton, in anticipation of a detention hearing for the defendant, Deputy Federal Public Defender Manuel Acosta sought first to preserve Ruffier's rights, "for the record," stating that Ruffier was not waiving his "due process" rights as there may be a jurisdictional issue based on international law. No other specifics were offered. The government avers that, even if Ruffier was acquitted of a kidnapping offense in Argentina charging the identical elements as alleged in Count One of the

instant indictment, a subsequent conviction in a United States Court of law of Count One of this Indictment would not violate his Constitutional rights.

## The Dual Sovereignty Doctrine

The Supreme Court, in *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076, 23 L. Ed. 2d 656 (U.S. 1969), stated that the Fifth Amendment of the Constitution guarantees against a second prosecution for the same offense whether the first prosecution resulted in a conviction or an acquittal, citing *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707, (overruled on other grounds).   In general, the Double Jeopardy Clause provides three categories of protection: (1) *against a "second prosecution for the same offense **after acquittal**"*; (2) against a "second prosecution for the same offense after conviction"; and (3) "against multiple punishments for the same offense." *United States v. Rabhan*, 628 F.3d 200, 204 (5th Cir. 2010) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L.Ed. 2d 656 (1969)). *United States v. Pham,* No. 210CR160SAJMV24, 2012 WL 12878600, at *3 (N.D. Miss. Apr. 24, 2012) (Emphasis added)

However, when the power to undertake criminal prosecution derives from separate and independent sources of power and authority, the power is inherent in each sovereign to determine what offenses to punish. *U.S. v. Wheeler*, 435 U.S. 313, 320, 98 S.Ct. 1079, 55 L.Ed. 2d 303 (1978) (finding that the Navajo Tribe was a separate sovereign from the federal government, permitting successive prosecutions).

> The dual sovereignty doctrine is founded on the common-law conception of crime as an offense against the sovereignty of the government. When a defendant in a single act violates the "peace and dignity" of two sovereigns by breaking the laws of each, he has committed two distinct "offences." *United States v. Lanza,* 260 U.S. 377, 382, 43 S.Ct. 141, 67 L.Ed. 314 (1922). As the Court explained in *Moore v. Illinois,* 14 How. 13, 19, 14 L.Ed. 306 (1852), "[a]n offence, in its legal signification, means the transgression of a law." Consequently, when the same act transgresses the laws of two sovereigns, "it cannot be truly averred that the offender

3

has been twice punished for the same offence; but only that by one act he has committed two offences, for each of which he is justly punishable." *Id.,* at 20.

*Heath v. Alabama*, 474 U.S. 82, 88, 106 S. Ct. 433, 437, 88 L. Ed. 2d 387 (1985).

The dual sovereignty doctrine was recognized by the Fifth Circuit in *U.S. v. Villanueva*, 408 F.3d 193, 201 (5th Cir. 2005), where Mexican authorities tried and convicted the driver and co-driver of a trailer hauling undocumented aliens, but dismissed charges against defendant Villanueva, citing *Bartkus v. Illinois,* 359 U.S. 121, 122–24, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). The Fifth Circuit noted that the only way to overcome the dual sovereignty doctrine, is to establish that the prosecution held in the foreign country was a sham. *Id* at 201. In the instant case, since the United States was unaware of the Argentinian prosecution, thus not a participant, no sham can be alleged. Moreover, Ms. Gonzalez adamantly insists on the validity of the Argentinian acquittal.

*See also*, *U.S. v. Guzman*, 85 F.3d 823, 826 (1st Cir. 1996) (no double jeopardy bar to prosecution by United States of possession of cocaine with intent to distribute after Dutch government tried defendant for possession); *U.S. v. Riviere*, 924 F.2d 1289, 1301-02 (3d Cir. 1991) (no double jeopardy bar to prosecution by United States for unlawful firearms possession following conviction in foreign country); *U.S. v. Studabaker*, 578 F.3d 423, 430 (6th Cir. 2009) (no double jeopardy bar to prosecution by United States for foreign travel with a minor with the intent to engage in criminal sexual activity though defendant was prosecuted in England for the same conduct); *U.S. v. Richardson*, 580 F.2d 946, 947 (9th Cir. 1978) (no double jeopardy bar to prosecution by United States for drug trafficking following conviction in Guatemala); *U.S. v. Duarte-Acero*, 208 F.3d 1282, 1286-87 (11th Cir. 2000) (no double jeopardy bar to prosecution by United States for murder conspiracies following conviction in Colombia); and *U.S. v. Rezaq*, 134 F.3d 1121, 1128 (D.C. Cir. 1998) (no double jeopardy bar to prosecution by United States for airplane hijacking following trial in Malta); *Chua Han Mow v. U.S.,* 730 F. 2d 1308, 1313 (9th Cir.

1984) (defendant's conviction for heroine offenses in Malaysia not a double jeopardy bar to prosecution in federal district court in California).

*In United States v. Jeong*, 624 F.3d 706, 713 (5th Cir. 2010), a South Korean national convicted in his native country for bribing U.S. public officials in exchange for their assistance in securing a lucrative telecommunications contract moved to dismiss a subsequent Northern District of Texas indictment based on the same bribery scheme.  As a basis for the dismissal, Jeong invoked the ostensible authority of a multilateral treaty to which both the United States and South Korea were signatories, the Convention on Combating Bribery of Foreign Public Officials in International Business Transactions. *Id.* at 709.  In affirming the trial court's rejection of Jeong's argument, the appellate court noted that the "double jeopardy" section of the treaty did not "prohibit two signatory countries from prosecuting the same offense." *Id* at 711. The court concluded that Jeong had not cited any relevant international agreement or applicable custom: "Jeong has not identified-nor does the record show-a legal agreement between the United States and South Korea that would permit a conclusion of jurisdictional waiver in this case, we simply lack a basis in which to evaluate Jeong's waiver claims." *Id*. at 712-13. [1]

---

[1] *See also, United States v. Duarte-Acero*, 208 F.3d 1282, 1286–88 (11th Cir. 2000), in which the trial court's denial of defendant's motion to dismiss indictment on double jeopardy grounds based on the Double Jeopardy clause in the International Covenant on Civil and Political Rights, was affirmed, holding that Article 14(7) of the ICCPR cannot be invoked defensively to avoid a prosecution in the courts of the United States despite an earlier prosecution for the same offense in the courts of another state party (Colombia).

## THE ELEMENTS OF 18 U.S.C. 1204, INTERNATIONAL PARENTAL KIDNAPPING

### Background

Defendant Ruffier was married to Olga Ruffier on August 25, 2001, in Gomel Belarus, Russia. On September 24, 2004, an annulment of the marriage of Olga and Juan Carlos Ruffier was granted by the 383rd District Court in El Paso, Texas. On March 25, 2005, Olga and the defendant reached an agreement regarding the custody of their son, Johnathan.  On April, 1, 2005, the 327th District Court in El Paso, Texas, awarded the two parents Joint Managing Conservators of the child. Olga was given the right to choose the child's place of residence and the defendant was designated certain visitation rights.

Pursuant to a child custody agreement and Order, the defendant was entitled to visitation with his son between April 15 and 17, 2005.  The court order authorized visitation from 10:00 a.m. to 4:00 p.m. each of the three days.  Wendy Ferrell Ruffier, the defendant's second wife, paid for the airline tickets from South Carolina to El Paso, Texas, for both Olga and Johnathan.  The defendant and Ferrell picked up Johnathan at Olga's hotel. At approximately 4:00 p.m., Ferrell called Olga, stated the child was sleeping and asked if she and the defendant could have an additional hour.  Olga agreed.  After the hour passed and the child was not returned to his mother, Olga began calling Ferrell's phone and received no answer. Olga went to the El Paso Police and filed an interference with child custody report.

A hearing was set before Judge Linda Chew of the 327th District Court for violation of the child custody order.  Proof was provided to the court that Ruffier received timely notice of the hearing from his own counsel, but failed to appear.  As a result, Judge Chew issued an arrest Capias for the defendant.  Bond was set at $100,000 and the warrant was entered into the National Crime

Information Center database.  Judge Chew also entered a Writ of Attachment ordering the Sheriff to take custody of Johnathan and return him to Olga.

On April 20 and 26, 2005, respectively, Olga filed reports regarding her kidnapped child with the El Paso Police Department and the FBI.  U.S. Department of State records show the defendant entered Argentina at Buenos Aires on May 13, 2005.

In July of 2005, Olga learned from an Argentinian female cousin of Ruffier that the defendant was in Argentina with Johnathan.  In September of 2005, Olga traveled to Buenos Aires, Argentina in an attempt to reclaim her son.   Olga filed a complaint with local police.  When the defendant learned Olga was in Argentina searching for him and Jonathan, he took the child and fled to Paraguay, where he was eventually arrested.  The child was returned to Olga by officials in Paraguay on December 12, 2005.

On April 13, 2006, the Texas Eighth Circuit Court of Appeals reversed the orders of the trial court regarding the custody of the child for want of jurisdiction of the child (who was apparently determined to have been residing in South Carolina at the time).

On June 28, 2006, a grand jury sitting in the El Paso Division of the Western District of Texas charged the defendant in a six count *sealed* indictment.

Count One of the Indictment alleges that: Beginning on or about April 15, 2005 and continuing until and including, on or about December 12, 2005, in the Western District of Texas and elsewhere, the Defendant, **JUAN CARLOS RUFFIER**, knowingly and intentionally removed a child (J.R.) from the United States and retained the child (J.R.) outside the United States with the intent to obstruct  the lawful exercise of parental rights of O.R., in violation of Title 18, United States Code, Section 1204.

## § 1204. International parental kidnapping

(a) Whoever removes a child from the United States, or attempts to do so, or retains a child (who has been in the United States) outside the United States with intent to obstruct the lawful exercise of parental rights shall be fined under this title or imprisoned not more than 3 years, or both.

(b) As used in this section—

    (1) the term "child" means a person who has not attained the age of 16 years; and

    (2) the term "parental rights", with respect to a child, means the right to physical custody of the child—

        (A) whether joint or sole (and includes visiting rights); and

        (B) whether arising by operation of law, court order, or legally binding agreement of the parties.

(c) It shall be an affirmative defense under this section that—

    (1) the defendant acted within the provisions of a valid court order granting the defendant legal custody or visitation rights and that order was obtained pursuant to the Uniform Child Custody Jurisdiction Act or the Uniform Child Custody Jurisdiction and Enforcement Act and was in effect at the time of the offense;

    (2) the defendant was fleeing an incidence or pattern of domestic violence; or

    (3) the defendant had physical custody of the child pursuant to a court order granting legal custody or visitation rights and failed to return the child as a result of circumstances beyond the defendant's control, and the defendant notified or made reasonable attempts to notify the other parent or lawful custodian of the child of such circumstances within 24 hours after the visitation period had expired and returned the child as soon as possible.

d) This section does not detract from The Hague Convention on the Civil Aspects of International Parental Child Abduction, done at The Hague on October 25, 1980.

## **The Court Order and Reversal**

During the almost twelve years the defendant absented himself from the United States, a few attempts were made by his criminal defense counsel to seek dismissal of what counsel believed was the single count charged against the defendant, international parental kidnapping.  In June of 2006, a counsel for Ruffier, notified the then-assigned Assistant United States Attorney and opined

that, since the Eighth Court of Appeals had reversed (vacated) Judge Chew's child custody orders regarding Johnathan Ruffier, any charges predicated on the custody order should be dismissed.

On January 17, 2017, undersigned received an email from a second attorney for Ruffier stating, "[a]ttached you will find a judgement and order from the Eighth District Court of Appeals in El Paso, Texas vacating the order of the 327TH District Court in case number 2004CM2833 which granted custody to Olga Ruffier. Since there was no valid grant of custody to Olga Ruffier we do not believe that the removal of Jonathan Ruffier to a foreign country comes within the ambit of the parental kidnapping statue."

On both occasions, the government declined to comment on the sealed charges or dismiss them. The time period alleged in Count One of the Indictment, April 15, 2005, to December 12, 2005, falls entirely during the pendency of the court ordered custody, prior to the reversal by the court of appeals. At the time the defendant deprived his ex-wife of possession of her child, the court order was still valid. Regardless, a conviction pursuant to 18 U.S.C. § 1204 is not reliant on court ordered custody. "[T]he principle imbedded in the statute is so obvious: absent a court order, both married parents have a right to physical custody of their child." *United States v. Homaune*, 898 F. Supp. 2d 153, 162 (D.D.C. 2012)

In *United States v. Amer*, 110 F.3d 873 (2d Cir. 1997), a father who fled from New York to Egypt with his three children argued that the definition in the International Parental Kidnapping Act (IPKCA) of "lawful exercise of parental rights" was unconstitutionally vague because the statute did "not provide any guidance as to whether parental rights are to be defined by state law, federal law, Egyptian law, customary international law, or positive law promulgated by the United Nations." *Id.* at 878  The Second Circuit noted that, in enacting the IPKCA,

> "Congress made clear in the legislative history of the Act that " 'parental rights' are
> to be determined by reference to State law, in accordance with the Hague

Convention...." H.R.Rep. No. 103–390, at 4 (1993), *reprinted in* 1993 U.S.C.C.A.N. 2419, 2422 ("House Report"). Article 3 of the Hague Convention provides that parental rights are to be defined by "the law of the State in which the child was habitually resident immediately before the removal or retention." Art. 3(a), Hague Convention, *opened for signature* Oct. 25, 1980, 19 I.L.M. 1501, T.I.A.S. No. 11670 (1980) (entered into force for the United States, July 1, 1988); *see* Merritt L. McKeon, *International Parental Kidnapping: A New Law, a New Solution,* 30 Fam. L.Q. 235, 240 (1996). held that the term "parental rights" in the IPKCA is not unconstitutionally vague "because Congress made clear in the legislative history of the Act that 'parental rights are to be determined by reference to State law. *Id.* at 879-80

See also, *United States v. Sardana*, 101 F. App'x 851, 853–54 (2d Cir. 2004) (the government was not required to prove the existence of court ordered custody, rather reliance on established State law was sufficient).

In the instant case, the child, Johnathan Charles Ruffier, was residing in South Carolina with his mother, Olga Ruffier in April of 2005. However, he traveled to El Paso, Texas for the purpose of visiting his father, the defendant. On April 15, 2005, he was staying with his mother at a hotel in El Paso, Texas. Whether the Court applies South Carolina State Law or Texas State Law to determine, pursuant to 18 U.S.C.§ 1204, whether the defendant retained Johnathan (who had been in the United States) outside the United States, that is in Argentina, with intent to obstruct the lawful exercise of Olga's parental rights, the result is the same.

Section 151.001 of the Texas Family Code, Rights and Duties of a Parent, in relevant part, provides: (a) A parent of a child has the following rights and duties: (1) the right to have physical possession…, and to designate the residence of the child; and (2) the duty of care, control, (and) protection.

Section 63-5-30 of the South Carolina Children's Code, Rights and duties of parents regarding minor children, in relevant part, provides: The mother and father are the joint natural guardians of their minor children and are equally charged with the welfare…of their minor

children…. the mother and father have equal power, rights, and duties, and neither parent has any right paramount to the right of the other concerning the custody of the minor; [n]either parent shall forcibly take a child from the guardianship of the parent legally entitled to custody of the child.

Whether this Court determines Johnathan was a legal resident of Texas or South Carolina at 5:00 p.m. on April 15, 2005, when the defendant deprived Olga Ruffier of her right to possession of her son and retained him, until December 12, 2005, outside of the United States with intent to obstruct the lawful exercise of Olga's parental rights, the result is the same.  This Court has both venue and jurisdiction of Count One of the Indictment in the above styled and numbered cause.

                                    Respectfully submitted,

                                    RICHARD L. DURBIN, JR.
                                    United States Attorney for the
                                    Western District of Texas

                                    By:  _____/s/_____
                                    Debra P. Kanof
                                    (Texas Bar # 11093600)
                                    Adrián E. Gallegos
                                    (Texas Bar # 24042413)
                                    Assistant United States Attorneys
                                    U.S. Attorney Office
                                    700 E. San Antonio, Ste. 200
                                    El Paso, Texas 79901
                                    (915) 534-6884 (office)
                                    (915) 534-3461 (fax)

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 20, 2017, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following electronically to the Office of the Federal Public Defender, Deputies Acosta and Trejo.

                                        /s/

                                    Debra P. Kanof
                                    Assistant U.S. Attorney