```
             IN THE UNITED STATES MAGISTRATE COURT
                   WESTERN DISTRICT OF TEXAS
                        EL PASO DIVISION


UNITED STATES OF AMERICA      )
                              )
v                             )   No. EP:06-CR-01261(1)FM
                              )
JUAN CARLOS RUFFIER           )


            ARRAIGNMENT AND DETENTION - CONTINUED
              BEFORE THE HONORABLE ANNE T. BERTON
                 UNITED STATES MAGISTRATE JUDGE
                        MARCH 10, 2017


APPEARANCES:

For the Government:    Ms. Debra Kanof
                       Assistant United States Attorney
                       700 East San Antonio, Suite 200
                       El Paso, Texas 79901


For the Defendant:     Mr. Manuel Acosta
                       and
                       Mr. Reginaldo Trejo
                       Assistant Federal Public Defender
                       700 East San Antonio, Suite D-401
                       El Paso, Texas 79901
```

Proceedings recorded by electronic recording.

Transcript produced by Rhonda McCay, CSR, RPR.

1           (Proceedings called to order)
2           THE COURT:  Good morning.  Please be seated.
3           The Court calls the case of the United States
4  of America versus Juan Carlos Ruffier, in EP, 06-CR-1261
5  for a district court arraignment and detention
6  hearings.
7           May I have announcements, please.
8           MS. KANOF:  Debra Kanof, for the United States.
9  We're ready, Your Honor.
10          THE COURT:  Thank you.
11          MR. ACOSTA:  Good morning, Your Honor.  Manuel
12 Acosta and Mr. Reginaldo Trejo, for Mr. Juan Carlos
13 Ruffier.
14          And, Your Honor, before we take up any other
15 issues, I need to articulate our objection to several
16 jurisdiction and venue type of issues, so we don't risk
17 waiving any of those.  As Your Honor knows, we haven't
18 received any information at this point other than the
19 indictment, but we want to be extra cautious regarding
20 those issues.
21          Your Honor, our objections in this regard
22 should be understood to be applying to the six charges
23 that we have.  There might be an exception to the 1204
24 charge, but out of abundance of caution, we're -- we're
25 objecting to that one as well.

1       And we -- we believe, Your Honor, that exercise
2  of jurisdiction over this alleged offenses by U.S.
3  Courts would violate general principles of international
4  law, an extraterritorial jurisdiction, and would violate
5  the principle of substantive due process and fundamental
6  fairness.
7       And we obviously object to venue being in the
8  Western District of Texas.
9       THE COURT:  Okay.
10       MS. KANOF:  For what reason and under what law,
11 Your Honor?
12       MR. ACOSTA:  And again, we'll be preparing more
13 motions regarding that, Your Honor.  We just didn't want
14 to waive any of our issues, and we'll definitely be
15 providing a motion regarding that.
16       As I mentioned, at this point, all we have is
17 an indictment.  We haven't received anything, although
18 the case has been pending for many, many years and the
19 government has had their information for over 10
20 years.
21       MS. KANOF:  May I respond with actual law, Your
22 Honor?
23       THE COURT:  Okay.  Go ahead, Ms. Kanof.
24       MS. KANOF:  Your Honor, this case was indicted
25 in 2006 by a grand jury in the Western District of Texas

1  because the defendant took a three-year-old child from
2  El Paso, Texas, first to Las Cruces, then back to El
3  Paso, then to Juarez, Mexico, and then to Argentina,
4  then to Paraguay, and then back to Argentina.  I don't
5  know where they think it violates some foreign law, but
6  the child was taken from El Paso, Texas, and a grand
7  jury did find that.
8          Mr. Ruffier was prosecuted in Argentina for
9  this kidnapping.  What happened was his wife -- or the
10 woman who was the mother of the child -- her name was
11 Olga -- is from Belorus.  And she -- she came here to
12 visit with the child and was given visitation, and --
13 I'm sorry.  She -- she brought the child to El Paso for
14 visitation.  Mr. Ruffier spent a couple of hours, as he
15 was permitted, and then didn't return the child and then
16 he absconded with the child.  He eventually absconded to
17 Argentina.
18         And Ms. -- when Olga Ruffier found out where
19 the child was, she went to Argentina and filed charges
20 with Argentinean police.  He was charged in Argentina
21 and he was acquitted.
22         I would cite to you *Heath versus Alabama*, which
23 is a United States Supreme Court case, which found there
24 that there are no due process issues.  And even if he's
25 acquitted, whether he's acquitted or whether he is

1  convicted, *Heath versus Alabama*, 474, U.S., 82, that
2  says that there are no double jeopardy or due process
3  issues when dual sovereigns, separate sovereigns,
4  prosecute the same case with identical elements, as long
5  as they're separate sovereigns.
6     In addition to that, Mr. Ruffier as a ruse, has
7  an attorney who is here in the -- in the courtroom, who,
8  as a sham, one year ago this week served me personally
9  at my home with a demand letter to dismiss this
10 indictment ostensibly under the Inter-American
11 Commission on Human Rights Act.
12    We, of course, sent that demand letter and a
13 copy of a complaint -- the complaint that was attached
14 to it regarding this prosecution -- they wanted it
15 unsealed, and, of course, I can't unseal anything. The
16 judge is the one who sealed it -- both the State
17 Department, the legal advisor at the State Department,
18 and the Office of International Affairs, who advised
19 that it was improper to serve an Assistant United States
20 Attorney for two reasons.
21    Number one, it wasn't my case. I didn't take
22 it to the grand jury. I didn't investigate it. The --
23 the fugitive file was assigned to [indiscernible] AUSA
24 who did -- left the office. And number two, only a
25 sovereign can be cited, that would be the United States

1   government.  So it was an improper --
2           May I get my water, Your Honor?
3           THE COURT:  Go ahead.
4           MS. KANOF:  [Indiscernible].
5           That the complaint should have been served on
6   the United States, not on me, so it was defective.  And
7   so it wasn't properly served.
8           I'll -- when we go through, I will explain to
9   the Court what the opinion is with regard to detention
10  of that action.  I was served on a Saturday at my home.
11          But basically, the Fifth Circuit has also spoke
12  to the due process and the constitutional issue.  And
13  the Fifth Circuit's opinion was -- give me a minute.
14          And I -- and I understand, Counsel, I don't
15  have any objection that they are just preserving their
16  objection, but I -- and I know that I've had a little
17  bit more time.  This was as much of a surprise to me --
18  or almost as much of a surprise to me as it was to
19  defense counsel.
20          But, anyway, the Fifth Circuit has cited the --
21  the *Heath* opinion and followed it.  And I have that at
22  my -- my desk, and I'll give the citation so I won't
23  waste the Court's time.
24          But, basically, it's well-founded law that when
25  there are dual sovereigns of foreign country that the

1   Fifth Circuit opinion involved the prosecution of
2   identical cases in Mexico and in this United States.
3   There's also case law in Canada, Guatemala, Asian
4   countries.  It's well-founded law that even if they --
5   if it's the identical case, which in this case it was
6   and he was acquitted, and if that's what they're talking
7   about, it just makes absolutely no difference.  The --
8   the separate sovereigns can absolutely both prosecute.
9   They have different interests.  The sovereigns are
10  independent.
11          I will also tell you that we filed our charges
12  first.  So we do have a petit policy, but when it
13  doesn't violate our petit policy because we followed --
14  filed our charges first.
15          So just so the Court feels comfortable with us
16  proceeding, I wanted to put that on the record.
17          THE COURT:  Thank you, Ms. Kanof.
18          And I understand, Mr. Acosta, that you were
19  seeking a continuance of these two hearings; is that
20  correct?
21          MR. ACOSTA:  Yeah, Your Honor.  And it is my
22  understanding the government is not objecting to our
23  continuance.  Mr. Trejo and Ms. Kanof had a
24  conversation.
25          MS. KANOF:  No, I did not.  No one ever spoke

1  to me about a continuance of this proceeding.  I flew an
2  agent in from Florida.
3          MR. ACOSTA:  And, Your Honor, I can have
4  Mr. Trejo let the Court know about that conversation
5  that they had just recently.  And Mr. Trejo is also one
6  of the assigned attorneys in this case.  And he can
7  clarify if I that to the Court what the communication
8  was.
9          THE COURT:  Go ahead.
10         MR. TREJO:  Your Honor, I did have a
11 conversation with Ms. Kanof over the phone in which Ms.
12 Kanof called me at my office to speak to me initially
13 about medication for Mr. Ruffier.
14         MS. KANOF:  About medications.
15         MR. TREJO:  She'll recall that.
16         She also told me that, and -- and I hope she
17 recalls this, that she understands that we may need more
18 time and she would not object to us getting -- granting
19 a continuance.  She would not oppose it.  I hope she
20 recollects --
21         MS. KANOF:  But he never asked for one.
22         THE COURT:  Let's not interrupt -- speak --
23         MS. KANOF:  I'm sorry.
24         THE COURT:  -- over each other, Ms. Kanof.
25         Go ahead, Mr. Trejo.

1      MR. TREJO:  So I'm thinking that Ms. Kanof now
2  remembers the conversation.  It was actually Ms. Kanof
3  that proposed it to me, for me to ask for a continuance,
4  and that's what we're asking for today.
5      MS. KANOF:  Your Honor, he never -- I said, "If
6  you need more time, let me know."  And there was never a
7  motion made.  I kept waiting for one.  My bosses kept
8  saying, "Has he made a motion to continue?  Has he said
9  he needed a continuance?"  And he never did.
10      And -- and -- and, in fact, the agent is here
11  in the courtroom.  And we waited till the -- till the
12  last hour to say, "Yeah, go ahead and get on an
13  airplane."
14      I would ask that he -- I don't mind them having
15  more time, but I would ask that at least the agent be
16  allowed to testify and -- and then we can continue the
17  hearing.  The defense can put on their case after
18  that.
19      THE COURT:  Okay.  Any objection to that?
20      MR. ACOSTA:  I do, Your Honor.  Because of
21  this -- this case is very different to our typical cases
22  that we have, the -- the charges that it has.  It's a
23  case that occurred back in 2004.  It's a case that the
24  government has had an advantage of over ten years over
25  us.  We just received the case.

1       Like I mentioned, I have absolutely no
2  information other than the one indictment that we have.
3  Hopefully, we'll get the grand jury transcript pretty
4  soon by Ms. Kanof.
5       But we do need that continuance to be ready for
6  this hearing.  We're not ready at this point, obviously,
7  because of the type of case and the issues that surround
8  it.
9       And I believe the government understood that
10 when they approached Mr. Trejo regarding that.  And
11 we're right now doing our motion for a continuance at
12 this point.
13      MS. KANOF:  Well, Your Honor, they're not
14 entitled to a grand jury transcript.  And what they're
15 asking is to get discovery before a detention hearing
16 and they're not entitled to that either.  We don't have
17 a discovery order yet.  I'm sure Judge Montalvo will
18 issue that within 14 days of arraignment, as is the
19 standard.
20      I don't mind giving them some advanced
21 discovery to assist them.  But, no, nobody gets
22 discovery before a detention hearing.  It's very
23 straightforward.
24      But I will tell the Court I have some other
25 issues that I would like to -- if you do continue the

1  detention hearing, I still have some other issues I'd
2  like to bring up with the Court that cause me a great
3  deal of concern, because defense -- the defendant
4  addressed this Court personally regarding his inability
5  to pay for an attorney, and he has now hired Jay Armes,
6  as a private investigator, who is seeking permission to
7  visit him in the jail.  And I have concerns with his
8  ability to pay for a private and expensive private
9  investigator to investigate a case when he has the
10 federal public defender, who has their own
11 investigators, number one.
12         And number two, I'm also concerned because the
13 defendant continually, in writing, on the Internet, in
14 text messages and we have voicemails, threatened the
15 life of a victim, a female, who is now -- who -- who
16 received victim funds to basically go incognito and live
17 in another location.  And I have real problems with him
18 seeking that location because they are not entitled -- I
19 would consider it stalking -- because they are not
20 entitled to know her whereabouts or her identity.  And
21 now he wants an expensive private investigator to find
22 that victim, locate that individual.
23         And like coming to my door a year ago and
24 improperly serving me -- and I will tell you the process
25 server was very aggressive, [indiscernible].

1        So I -- I am concerned about what's going on.
2  I will also tell the Court that after the hearing last
3  week, I was approached by a court security officer who
4  told me a prosecutor from Argentina wanted to talk to
5  me.  It turns out that not only was it not his
6  prosecutor, it was his defense attorney.  And in
7  addition, who -- she did confess to me -- evidently, in
8  Argentina, you can be both.  But the point is she was
9  never his prosecutor.  She was his defense attorney.
10 But if you look on Facebook, she's clearly vacationing
11 with him and his child, so she's clearly more than his
12 defense attorney -- who confronted me and insisted that
13 I dismiss the charges.
14        And fortunately, the court interpreter assisted
15 me because I don't speak Spanish well enough to have had
16 this conversation.  And she started crying when I told
17 her the threats were in writing in the presence of -- of
18 the FBI agents.  And then said -- admitted that she was
19 the one who had me served, and that I refused to unseal
20 the indictment for her.  I'm very concerned about the
21 behavior.
22        The other thing that he posted on Facebook was
23 "This is war," which is a terminology that the evidence
24 is replete with when he threatens the other witnesses.
25        So I have a lot of concern about delaying this

1  detention hearing and of the tactics that the
2  manipulative defendant has engaged in already throughout
3  this time period.
4          It didn't happen in 2004.  It happened the --
5  the court order was in 2005, although you don't need a
6  court order for international kidnapping.  It can be a
7  premise, but it doesn't have to be.  And the -- a lot of
8  the threats carried on past that period of time.
9          And again, I don't mind giving defense counsel
10 some of the threats so they can understand the serious
11 nature.  But I have a lot of concern of what has already
12 happened just since he surrendered himself.  He didn't
13 know that there was anything -- his -- his defense
14 attorney friend told me they didn't know there was
15 anything in the indictment other than the kidnapping.
16 He thought he was going to walk scot-free because of
17 theories about dismissal.  He didn't know that he was
18 charged with threatening to kill the agent, threatening
19 to kill if former wife, and other things.
20         So I -- I have a lot of concerns with
21 continuing this until they get discovery, continuing
22 this to let a privately hired investigator stalk and try
23 to attempt to locate one of the victims.
24         And if we have to continue, we have to continue
25 it.  And of course the government will pay to return

1  Mr. Rankin to El Paso -- Agent Rankin to El Paso.  But
2  some of the representations that have been made just
3  weren't accurate.
4          THE COURT:  All right.  I am on this case for
5  the arraignment and detention hearings.  That -- those
6  are the matters before this Court.  If you have any
7  issues you want me to consider, submit them in writing
8  by close of business on Monday.
9          And we will reset this case for the arraignment
10 and detention hearings on Wednesday, the 15th of March,
11 at 10:00 a.m.
12         MR. ACOSTA:  Thank you, Your Honor.
13         THE COURT:  Anything else, Ms. Kanof?
14         MS. KANOF:  No.  Nothing further from the
15 government, Your Honor.
16         THE COURT:  Mr. Acosta?
17         MR. ACOSTA:  Thank you, Your Honor.
18         THE COURT:  Mr. Trejo?
19         MR. TREJO:  [Indiscernible].
20         THE COURT:  You may be excused.
21         (Proceedings concluded)

CERTIFICATE OF ELECTRONIC RECORDING

I, Rhonda McCay, CSR, RPR, certify that the foregoing is a correct transcription from the electronic recording of the proceedings in the above-entitled matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this electronic recording was taken, and further that I am not financially or otherwise interested in the outcome of the action.

Signed this 27th day of March, 2017.

/s/ Rhonda McCay_____
Rhonda McCay, RPR, CSR 4457
Date of Expiration: 12/31/2018
REPORTERS INK, LLC
221 North Kansas, Suite 1101
El Paso, Texas 79901
Ph.: 915.544.1515