UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| V. | § § | NO. EP-06-CR-1261-FM |
| JUAN CARLOS RUFFIER | § | |

**DEFENDANT'S RESPONSE TO GOVERNMENT
MOTION FOR PROTECTIVE ORDER**

TO THE HONORABLE FRANK MONTALVO, DISTRICT JUDGE OF THE UNITED STATES
DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS:

JUAN CARLOS RUFFIER, Defendant herein, hereby presents this response to the
Government's motion for protective order as to witness and uncharged co-defendant Wendy
Ferrell:

1.

This case originally arose from an alleged international parental kidnapping of Jonathan
Charles Ruffier, Mr. Ruffier's son, during a 2005 custody battle between Mr. Ruffier and the
child's mother.  Wendy Ferrell was Mr. Ruffier's attorney on the custody dispute at the time as
well as his second wife and knowingly participated in the actions alleged to constitute the
kidnapping.  Although she has not yet been charged, it is clear from the complaint and the
Government's proffer at the detention hearing that Ferrell aided and abetted any alleged removal
of the child from the United States and the establishment of their lives in Argentina.

2.

While in Argentina, Ferrell and Mr. Ruffier had an altercation which became physical.  She
is expected to testify that he struck and choked her and that she fled and returned to El Paso without

him.  The Government alleges that he subsequently made a number of threats to her from Argentina via phone, text, and/or email, and the Government added additional charges of threatening a witness.

3.

Any alleged threats were made from Argentina and there is no evidence or indication that Mr. Ruffier ever sought or tried to carry out any threats in the eleven-plus years since then.  The Government attempted at the detention hearing to show that he was dangerous but was unable to proffer anything indicating any intent to carry out any threats.  Ultimately, it tried to rely on a process server attempting to serve the AUSA with legal process on behalf of the United States to show Mr. Ruffier's extreme dangerousness[1].

4.

Although the Government's motion seeks to conflate Mr. Ruffier's actions with those of his attorney and investigators in an effort to show that they are dangerous too, it does not even attempt to allege that the Federal Public Defender's office (his appointed counsel on the charges in this case), or any member thereof participated in any impropriety or witness intimidation.  As the Court is no doubt aware, this Office holds its attorneys and investigators to high standards of conduct and any such impropriety would be cause for serious internal investigation and discipline. The Court is also aware that the Defender personally would absolutely not tolerate any efforts to intimidate or terrorize any person by members of the Office and any such would most likely result in being fired.

---

[1] Given that one of the primary reasons we have developed systems of law is to impartially adjudicate disputes and prevent people from taking matters into their own hands or seeking self-help remedies, proper resort to legal proceedings would seem to indicate the absolute antithesis of dangerousness.

5.

Now, in 2017, twelve years later, the Government, <u>citing zero authority for the extreme step it asks the Court to take</u>[2], proposes to subject the Federal Public Defender as Mr. Ruffier's defense counsel to an order forbidding it from properly investigating the case and requiring it to only contact Ferrell with the permission of and through the prosecutor's office.  Indeed, it seeks to have them prohibited from even investigating her or trying to locate her or from trying to interview her father (also, by the Government's claims in this Motion and proffer at the detention hearing, a potential witness herein).

6.

The Government contends that Mr. Ruffier's counsel should be required to "demonstrate some compelling reason and demonstrate authority" for its right and duty to interview a primary government witness before trial.  A short answer to that contention might be the Sixth Amendment to the United States Constitution and the right to effective assistance of counsel.  Interviewing or at least attempting to interview, the Government's witnesses and performing investigation as to them is a basic component of effective assistance of counsel and integral to an effective cross examination.   "The traditional counterbalance in the American adversary system for these interviews arises from the equal ability of defense counsel to seek and interview witnesses himself." *United States v. Ash*, 413 U.S. 300, 318, 93 S. Ct. 2568, 2578, 37 L. Ed. 2d 619 (1973).  Failure to investigate witnesses has been held to constitute ineffective assistance of counsel by the U.S. Supreme Court.  *Wiggins v. Smith*, 539 U.S. 510, 534-45 (2003).

---

[2]  The Government does include the text of one statute, 18 U.S.C. §2261, but this statute is not in any way charged or involved in this case nor does the Government have evidence that Mr. Ruffier violated it.  Rather, its own proffer at the detention hearing showed that Mr. Ruffier returned to the United States to turn himself in to the U.S. Marshals on this case through an attorney, a far cry from traveling with an intent to injure, harass, or intimidate another person. Other than this, its only claimed authority for this action is a claim that "this Honorable Court is well aware" that a defendant has no right to have his attorney investigate the identity and location of a primary government witness in a felony trial.

7.

The specific AUSA involved, Debra Kanof, has been involved in witness tampering and interference with defense subpoenas before.  In one case, a subpoena *duces tecum* for pretrial production of documents was properly issued by the District Court *ex parte* after the requisite showing of materiality and necessity. It required the witness to produce the documents to the Court by a certain date.  The witness, who was expected to be a primary witness for the Government at the trial, contacted Ms. Kanof, who had him produce the documents to her rather than to the Court as ordered by the subpoena. She claimed to the Court that she had only engaged in a cursory review of the documents, but out of a stack of some roughly 400 documents, she had removed one which she believed contained personal information and placed in a manila envelope. *United States v. Delgado*, Docket No. EP-13-CR-00370-DCG, Document 184.  This similarly involved a situation where Ms. Kanof conflated her role as the prosecution with acting as private counsel for the witness: she actually filed pleadings on his behalf seeking an extension of time to comply with the subpoena although he was represented by his own counsel.  As a result, the defense's effort in obtaining an advance subpoena and the court's time in hearing and ruling on it were wasted, and the prosecution derived a tactical benefit (however minor) from Ms. Kanof's misconduct.

8.

Wendy Ferrell is an uncharged co-defendant as to Count 1.  However, throughout its motion, the Government refers to Ferrell as "Wendy" rather than "Ms. Ferrell".  This is an obvious attempt to humanize her and make her appear vulnerable and credible rather than a sophisticated attorney and a knowing co-conspirator who participated in planning and executing any scheme Mr. Ruffier is charged with.  However, this is not *The People's Court*; it is a United States District Court.  Just as the Government would object if defense counsel referred to an accused in legal

4

pleadings or in-court examination only by the endearing diminutive of his first name ("So, Tito, what happened next….?"), counsel for the Government should be admonished that it must observe the appropriate protocols in Federal court and that witnesses (particularly cooperating defendants, even if they cut the deal before they were formally charged) should be referred to by title and last name.

WHEREFORE, Mr. Ruffier requests that the Government's motion be denied in all things. In the event the Court is inclined to issue some sort of protective order, the order should exclude the Federal Public Defender's office.  Finally, in order to preserve the integrity of the adversarial process, Ms. Kanof, the U.S. Attorney's office, and the FBI should be taken out of the loop and the Court should be the one to make any decisions about access to witnesses and codefendants.

Respectfully Submitted,

Maureen Scott Franco
Federal Public Defender


/S/
MANUEL ACOSTA-RIVERA
Assistant Federal Public Defender
Western District of Texas
Richard C. White Federal Building
700 E. San Antonio, D-401
El Paso, Texas  79901
(915) 534-6525
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of April, 2017, I electronically filed the foregoing with the Clerk of Courts using the CM/ECF system which will send notification of such filing to the following: AUSA Debra Kanof , Office of the U.S. Attorney, Richard C. White Building, 700 E. San Antonio, Suite 200, El Paso, TX 79901.


/S/
MANUEL ACOSTA-RIVERA
*Attorney for Defendant*